UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENNETH R. BURNETT, | ) |
| | ) |
| Plaintiff, | ) CASE NO.  C09-190-RSM |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| DR. M. ASLAM, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

### INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Kenneth Burnett has filed a civil rights action pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), to allege violations of his constitutional rights during two periods of incarceration at the Federal Detention Center in SeaTac, Washington ("FDC SeaTac").  Specifically, plaintiff alleges that defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, when they ignored his numerous requests for medical treatment and effective pain medication for his chronic neck and back pain.[1]  Plaintiff identifies Clinical Director Muhammad Aslam,

---

[1] Plaintiff filed an amended complaint on July 14, 2009, and a second amended

M.D., Medical Officer Maria Dy, M.D., Health Services Administrator Tita Iturralde, and former Warden Robert Palmquist as defendants in this action.

Defendants now move for summary judgment.  Plaintiff, despite having been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), has filed no response to defendants' motion for summary judgment.  This Court, having reviewed defendants' motion, and the balance of the record, concludes that defendants' motion for summary judgment should be granted, and this action should be dismissed with prejudice.

## FACTS

Plaintiff alleges in his second amended complaint that from December 3, 2007, through February 29, 2008, and again from November 25, 2008, through February 13, 2009, defendants denied him medical treatment and effective pain medication for his chronic and debilitating neck and lower back pain.  (Dkt. No. 16 at 6.)  During the periods in question, plaintiff was housed at FDC SeaTac as a result of supervised release violations which arose out of plaintiff's 2002 conviction for carrying and possessing a firearm in furtherance of a drug trafficking crime.[2]  (Dkt. No. 26 at 2.)

---

complaint on July 20, 2009.  (*See* Dkt. Nos. 13 and 16.)  The pleadings themselves are essentially the same.  However, plaintiff submitted a series of exhibits with his second amended complaint which he did not include with his first amended complaint, even though the exhibits were referenced in the first pleading.  Because the second submission is more complete, the Court deems the second amended complaint, and attached exhibits, to be the pleading at issue in this action.

[2] Plaintiff was originally sentenced to a term of 60 months incarceration to be followed by a three year term of supervised release.  (*See* Dkt. No. 26 at 2.)  Plaintiff completed his original term of incarceration on May 15, 2007.  (*Id*.)  However, he was thereafter returned to custody three times for violating the terms of his supervised release.  (*Id*.)  Each of the three violations involved the consumption of illegal drugs.  (*Id*. at 3-4.)

REPORT AND RECOMMENDATION
PAGE -2

When plaintiff arrived at FDC SeaTac on December 3, 2007, following his arrest for violating the terms of his supervised release, Mid-Level Practitioner Manuell Lacist ("MLP Lacist") completed an intake health screening for plaintiff. (Dkt. No. 27-2 at 27-32.) The intake screening form noted that plaintiff suffered from chronic back pain, that he had a history of substance abuse, and that he was going through opiate withdrawal. (*See id*. at 30-31.) Plaintiff was prescribed medication for opiate withdrawal and Motrin for his back pain. (*Id*. at 27 and 31.) The record indicates that Dr. Dy reviewed the intake screening completed by MLP Lacist and gave verbal orders authorizing the medication for opiate withdrawal. (*See* Dkt. No. 27 at 1-2; Dkt. No. 27-2 at 27 and 31-32.)

On December 11, 2007, plaintiff appeared at sick call complaining of low back pain. (*See* Dkt. No. 27-2 at 24.) Plaintiff was evaluated on that occasion by Physician Assistant Stephen Leaf ("PA Leaf"). (*See id*.) The notes of that clinical encounter indicate that plaintiff had been tapered off of narcotic medications and that Ibuprofen was not helping. The notes further indicate that plaintiff had problems with heroin addiction and was constantly self-medicating for pain. (*Id*.) At that time, plaintiff was prescribed two new medications for pain, Salsalate and Amitriptyline. (*Id*. at 25.) Dr. Dy co-signed the clinical encounter report. (*Id*.)

Plaintiff was evaluated again by PA Leaf on December 15, 2007, for complaints of low back pain, and Dr. Dy again co-signed plaintiff's chart. (Dkt. No. 27-2 at 22.) It is not clear what additional treatment, if any, plaintiff received at that time. However, on December 21, 2007, in response to continued complaints of back pain, Dr. Dy ordered that the dosage of plaintiff's pain medication, Amitriptyline, be increased. (*See* Dkt. No. 27 at 2; Dkt. No. 27-2

at 22.)

On January 8, 2008, plaintiff filled out an Inmate Request to Staff form in which he complained that he was being denied medication that had previously been prescribed for his back pain, "Morphen 30 mg," and that the medication he had been provided, Ibuprofen and Sulsalate, didn't work. (Dkt. No. 16-2 at 58.) It is not clear who, specifically, the request was directed to, but it does appear clear that it was directed to the medical staff. (*See id*.) It is also unclear whether anyone at FDC SeaTac ever responded to that request.

On January 22, 2008, plaintiff submitted a request for administrative remedy in which he asked that he be "switched back" to Morphen Sulfate, 30 mg, because the pain medication he had been prescribed was not working. (*See* Dkt. No. 16-2 at 60.) On February 13, 2008, plaintiff again appeared at sick call complaining of neck, arm, and back pain. (*See* Dkt. No. 27-2 at 20-21.) MLP Lacist evaluated plaintiff on that date. It appears that plaintiff was evaluated by Dr. Dy as well. (*Id*. at 21.) At that time, plaintiff was prescribed Oxycodone/Acetaminophen for pain, and a radiological consult was ordered. (*Id*.) The radiologic report, which was prepared on February 14, 2008, concluded that there were degenerative changes of plaintiff's cervical spine and the lumbar spine. (*Id*. at 19.)

On February 26, 2008, Warden Palmquist responded to plaintiff's January 22, 2008, request for administrative remedy. (*See* Dkt. No. 16-2 at 61.) The Warden indicated therein that plaintiff's request to be placed on Morphen Sulfate, 30 mg, had been disapproved by the acting Clinical Director because it was not clinically indicated. (*Id*.) The Warden also noted that plaintiff had recently been prescribed Oxycodone/Acetaminophen for pain, and that plaintiff had been prescribed Ibuprofen for pain as well. (Dkt. No. 16-2 at 61.) The Warden

REPORT AND RECOMMENDATION
PAGE -4

concluded that plaintiff was being provided adequate medical care and therefore denied plaintiff's request for administrative remedy.  (*Id.*)

On February 22, 2008, plaintiff completed an informal resolution attempt form in which he complained that he was not receiving proper medical attention or proper medication for his back pain.  (*Id.* at 62.)  The staff response to plaintiff's complaint was that plaintiff had been given the proper medication for pain and that the medical staff would not prescribe narcotics for plaintiff's pain.  (*Id.*)  Plaintiff thereafter submitted a request for administrative remedy in which he again complained that he was not getting any medical attention for his back injuries and that he was in severe pain.  (*Id.* at 63.)  Plaintiff requested that he "be seen by a doctor that can treat my condition."  (*Id.*)

On March 4, 2008, Warden Palmquist responded to plaintiff's request for administrative remedy.  (*Id.* at 64.)  The Warden noted in his response that plaintiff had been seen by medical staff several times for complaints regarding his back injury and back pain.  (*Id.*)  The Warden further noted that plaintiff had been told by the doctor that his pain medication would not increase and that he would not be prescribed narcotics.  (*Id.*)  It appears that plaintiff had already been transferred out of FDC SeaTac by the time Warden Palmquist issued his response.  (*See* Dkt. No. 26, Attachment A at 1.)

On November 26, 2008, when plaintiff returned to FDC SeaTac after again violating the conditions of his supervised release, MLP Lacist completed another intake health screening for plaintiff.  (*See* Dkt. No. 26 at 4; Dkt. No. 27-2 at 13-18.)  During that screening, plaintiff reported that he had pain in the cervical spine.  (Dkt. No. 27-2 at 15.)  Plaintiff was prescribed Oxycodone/Acetaminophen and Ibuprofen to manage the pain.  (*See* Dkt. No. 27-2 at 17.)

REPORT AND RECOMMENDATION
PAGE -5

Dr. Dy, it appears, reviewed and co-signed plaintiff's intake screening. (*Id*. at 18.)

On November 28, 2008, plaintiff submitted a sick call sign up form in which he requested to be seen be a doctor because the pain medication he was on was not having any lasting effect on the pain. (Dkt. No. 16-2 at 2.) Plaintiff was seen at sick call on December 8, 2008, where he complained about pain in his neck, left arm, and lower back and requested that stronger pain medication be prescribed. (*See* Dkt. No. 28-2 at 2-3.) Plaintiff was evaluated by MLP Lacist who then referred plaintiff to Dr. Aslam for re-evaluation of his chronic cervical and lower back pain. (*Id*. at 4.)

According to Dr. Aslam, when he observed plaintiff on December 8, 2008, plaintiff did not appear to be in pain. (Dkt. No. 28 at 2.) Dr. Aslam concedes, however, that assessing pain can be highly subjective. (*Id*. at 2.) Dr. Aslam's notes of the December 8, 2008, evaluation describe plaintiff's history of intravenous drug abuse, opiate addiction, and other substance abuse. (Dkt. No. 28-2 at 1.) Dr. Aslam's notes also reflect that he gave plaintiff the option of choosing from among three other medications which are used to address chronic pain: Amitriptyline, Nortriptyline, and Carbamazepine, but plaintiff refused all of them, indicating that he would instead pursue his administrative remedies and lawsuits in order to obtain Oxycontin. (*Id*.) Dr. Aslam also advised plaintiff during the December 8, 2008, consult that he was scheduled to see a neurosurgeon. (Dkt. No. 28 at 2.)

The record reflects that between December 9, 2008 and February 8, 2009, plaintiff submitted no fewer than sixteen inmate request to staff forms and six sick call sign up forms complaining about his back pain and/or the ineffectiveness of the pain medication he was being provided. (*See* Dkt. No. 16-2.)

REPORT AND RECOMMENDATION
PAGE -6

01       On January 6, 2009, plaintiff was seen by neurologist Dr. Zhu, for a neurological

02 consult.[3] (Dkt. No. 28 at 2.)   After reviewing the MRI of plaintiff's cervical spine, Dr. Zhu

03 recommended that plaintiff be seen by a neurosurgeon.  (Dkt. No. 16-2 at 42.)   According to

04 both Dr. Dy and Dr. Aslam, after reviewing Dr. Zhu's recommendations, it was their intent to

05 have plaintiff evaluated by a neuorsurgeon.  (*See* Dkt. No. 27 at 2, Dkt. No. 28 at 2.)   And, in

06 fact, it appears that Dr. Dy completed a neurosurgery consultation request on January 26, 2009.

07 (*See* Dkt. No. 16-2 at 43.)   However, plaintiff was transferred out of FDC SeaTac before he

08 could be seen by a neurosurgeon.  (Dkt. No. 28 at 2.)

09 DISCUSSION

10 Summary Judgment Standard

11       Summary judgment is proper only where "the pleadings, depositions, answers to

12 interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

13 genuine issue as to any material fact and that the moving party is entitled to judgment as a

14 matter of law."  Fed.R.Civ.P. 56(c).   The moving party has the burden of demonstrating the

15 absence of a genuine issue of material fact for trial.  *Anderson v. Liberty Lobby, Inc*., 477 U.S.

16 242, 257 (1986).   Genuine disputes are those for which the evidence is such that a "reasonable

17 jury could return a verdict for the nonmoving party."  *Id*.   Material facts are those which might

18 affect the outcome of the suit under governing law.  *Id*.

19       In response to a properly supported summary judgment motion, the nonmoving party

20 may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts

---

[3] While a neurosurgery consult had originally been ordered, Dr. Aslam explains that the group practice that was to see plaintiff required that a Bureau of Prisons ("BOP") referral first be evaluated by the practice's neuorologist.  (Dkt. No. 28 at 2.)

REPORT AND RECOMMENDATION
PAGE -7

demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court is required to draw all inferences in a light most favorable to the non-moving party. *Id*. at 248. The court may not weigh the evidence or make credibility determinations. *Id.*

<u>Eighth Amendment Claim</u>

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This duty includes ensuring that inmates receive adequate medical care.[4] *Id*. In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834.

The objective component of an Eighth Amendment claim is "contextual and responsive to 'contemporary standards of decency'" *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate

---

[4] It appears from the record that plaintiff may have been a pretrial detainee during some, but not all, of the time at issue in this action. Claims of inadequate medical care asserted by a pretrial detainee arise under the Due Process Clause of the Fourteenth Amendment and not under the Eighth Amendment. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). However, Eighth Amendment standards are still applicable to such claims. *See id*.

REPORT AND RECOMMENDATION
PAGE -8

indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

Defendants argue in their summary judgment motion that plaintiff has not demonstrated that they were deliberately indifferent to a serious medical need and, thus, that plaintiff's Eighth Amendment claim must be dismissed. Defendants offer in support of their summary judgment motion affidavits of both Dr. Dy and Dr. Aslam, as well as copies of plaintiff's relevant medical records. Plaintiff has not responded in any fashion to defendants' summary judgment motion. Plaintiff did, however, submit in support of his second amended complaint a series of documents which he identifies as "plaintiff's evidence." This "evidence" consists of Sick Call Sign Up forms, Inmate Request to Staff Member forms, medical records, and forms related to his efforts to pursue administrative remedies with respect to the claims at issue here.

It is clear from plaintiff's documentation that he made repeated complaints regarding his neck and back pain to his medical providers and to others at FDC SeaTac, and that he was persistent in his requests for new medication to more effectively manage his pain, particularly during the period from November 26, 2008 to February 13, 2009. However, defendants' evidence establishes that plaintiff did receive treatment for his neck and back pain during both of the periods of time in question, it was simply not the treatment he wanted.

Dr. Aslam states in his affidavit that, in his clinical judgment, the medication which plaintiff was seeking, OxyContin, was counter-indicated because it is a highly addictive narcotic and plaintiff had a history of substance abuse. (Dkt. No. 28 at 2.) Dr. Aslam

explains that "[i]n light of [plaintiff's] history, the last thing he needed was to try to fight a narcotics addiction because of the potential for abuse and availability of other less addictive and dangerous alternatives." (Dkt. No. 28 at 2.) Dr. Aslam also states in his affidavit that other medications were offered to plaintiff to address his pain, but plaintiff refused those medications. (*Id.*)

It is well established that differing opinions on medical treatment do not amount to a violation under the Eighth Amendment. *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). In order to prevail on an Eighth Amendment claim in these circumstances, a plaintiff must show "that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson*, 90 F.3d at 332 (citations omitted).

While plaintiff was clearly dissatisfied with the manner in which defendants addressed his chronic neck and back pain, he offers no evidence demonstrating that the course of treatment chosen by defendants was medically unacceptable or that decisions made regarding plaintiff's course of treatment were made in conscious disregard of an excessive risk to plaintiff's health. Accordingly, defendants are entitled to summary judgment with respect to plaintiff's claim that they provided inadequate medical care.

## CONCLUSION

For the reasons set forth above, this Court recommends that defendants' motion for summary judgment be granted and that plaintiff's second amended complaint, and this action, be dismissed with prejudice. A proposed order accompanies this Report and

01  Recommendation.

02       DATED this 25th day of June, 2010.

03

04                                            /s/ Mary Alice Theiler
                                              Mary Alice Theiler
05                                            United States Magistrate Judge

06

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION
PAGE -11